NOT DESIGNATED FOR PUBLICATION

No. 124,275

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

TERRY L. WEBB,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed December 16, 2022. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., HILL and ATCHESON, JJ.

PER CURIAM: In a bench trial, the Sedgwick County District Court found Defendant Terry L. Webb guilty of aggravated escape from custody when he left a residential community corrections program with permission but did not return as directed. Webb has appealed the conviction and resulting sentence on the grounds his conduct did not violate K.S.A. 2019 Supp. 21-5911, the statute defining the crime. On appeal, he offers a pair of related arguments playing off the statutory language; they come up short and cannot be reconciled with a Kansas Supreme Court decision construing the predecessor statute. We, therefore, affirm the district court.

1

The district court found in August 2019 that Webb violated the terms of his probation on a felony conviction and imposed a 60-day jail sanction. The district court stayed the sanction when Webb entered the Sedgwick County Adult Residential Facility in mid-August. The facility is considered a community corrections program, so it is a form of conditional release rather than incarceration. Convicted defendants, like Webb, spend nights at the facility and typically are released during the day to go to jobs or to look for employment. On August 30, Webb was released at 10 a.m. to job-hunt and was directed to return no later than 3:05 p.m. He didn't.

After Webb took off, he periodically contacted staff at the facility to say he wanted to come back. But he never did. The district court issued a warrant for Webb's arrest for aggravated escape from custody. Webb was arrested on the warrant in December 2019. Webb waived his right to a jury trial. And the district court held a bench trial in May 2021 at which the State called staff members from the Adult Residential Facility who testified about their interactions with Webb. The State also introduced a document Webb signed on August 23, 2019, acknowledging and agreeing to abide by the facility's rules. The document prominently states that residents who fail to return as directed at designated times may be prosecuted for aggravated escape from custody or other crimes. Webb testified in his own defense and conceded he left the facility, did not return, and was aware of the possible consequences as outlined in the agreement he signed.

The district court found Webb guilty of aggravated escape from custody in violation of K.S.A. 2019 Supp. 21-5911(b)(1)(A), criminalizing "[e]scaping while held in custody . . . [u]pon a charge, conviction of[,]or arrest for a felony" as a severity level 8 nonperson felony. The district court later sentenced Webb to serve 18 months in prison,

2

reflecting the low presumptive guidelines punishment based on his criminal history, to be followed by 12 months of postrelease supervision. Webb has appealed.

ANALYSIS

On appeal, Webb attacks his conviction on dual grounds he characterizes as challenges to the sufficiency of the evidence, although they actually depend more on how language in K.S.A. 2019 Supp. 21-5911 is construed. We view the trial evidence in the best light for the State, as the prevailing party. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018). In a sufficiency challenge, we simply ask whether a rational fact-finder properly could have determined the defendant to be guilty beyond a reasonable doubt based on that assessment of the evidence. 307 Kan. at 844-45. In reviewing the statutory language, we strive to discern and give effect to the legislative intent and purpose in enacting a statute. We typically give the words of a statute their ordinary meaning. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022); *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009). When the words are statutorily defined, we must respect and apply those definitions. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017); *State v. Baumgarner*, 59 Kan. App. 2d 330, 335, 481 P.3d 170 (2021). Statutes should be construed to avoid unreasonable or absurd outcomes if that's possible without doing grave linguistic violence to the words used. *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015).

Webb first argues that he was not in "custody" within the meaning of K.S.A. 2019 Supp. 21-5911(b)(1)(A). The argument, however, is not framed with precision. If Webb is claiming his placement at the Adult Residential Facility does not constitute custody, the statute plainly undercuts his position. In K.S.A. 2019 Supp. 21-5911(d)(1), "custody" is defined to include "detention in a . . . facility pursuant to a court order . . . imposed as a specific condition of assignment to a community correctional services program."

3

Conversely, "custody" does not include the general supervision of a person on probation. K.S.A. 2019 Supp. 21-5911(d)(1). Webb was required to be at the facility at night and when not otherwise granted leave to be out. That amounts to detention, and the facility was a form of community correction, so it fits within the definition.

More likely, Webb contends he was not in custody when he left the facility itself with permission. During that time, Webb's movements were not impeded with shackles or confined by bars on a cell. But he was not at liberty to roam where he pleased for as long as pleased. So Webb remained in legal custody.

Moreover, Webb's argument is undone by *State v. Garrett*, 235 Kan. 768, 774-75, 684 P.2d 413 (1984), construing K.S.A. 1983 Supp. 21-3809 and K.S.A. 21-3810 (Ensley), predecessor statutes to K.S.A. 2019 Supp. 21-5911 that criminalized escape from custody and aggravated escape from custody, respectively. The material provisions in K.S.A. 21-3810 (Ensley) and K.S.A. 2019 Supp. 21-5911 are legally and functionally indistinguishable. In *Garrett*, the court held: "K.S.A. 21-3810, which provides for the offense of aggravated escape from custody, is applicable to a convicted felon who, without permission and in violation of the rules, departs from a community corrections facility or fails to return following temporary leave lawfully granted." 235 Kan. at 418. Webb, of course, was a convicted felon who failed to return from temporary leave from a community corrections facility. In his briefing, Webb does not mention *Garrett*, let alone try to distinguish it in some fashion. We view that silence to be about as effective as any argument we perceive he might have offered to deflect the decidedly deleterious impact of *Garrett* on his legal position.

Apart from *Garrett*, Webb's argument fails because it conflicts with the plain language of K.S.A. 2019 Supp. 21-5911(d)(2)(B)(iii) defining "escape" as including the "failure to return to custody following temporary leave lawfully granted by . . . a custodial official authorized to grant such leave." To accept his position, we would have

4

to endorse a reading of the statute that rejects what seems to be the obvious import of the definition and a clear legislative intent to criminalize precisely what Webb did here.

Webb's second argument trades on a similarly untenable reading of the statutory language. He contends there was no "failure to return to custody" under K.S.A. 2019 Supp. 21-5911(d)(2)(B) because he did return when he was arrested on the warrant some four months after he walked away. Webb, of course, was forcibly returned and did not come back voluntarily. So there was a failure on his part to return of his own volition, and that sort of failure is part and parcel of what the statute criminalizes. Webb's argument cannot be reconciled with the holding in *Garrett*. Nor does it represent a reasonable reading of the applicable phrase.

Webb's interpretation leads to an absurd outcome effectively precluding the prosecution of anyone given permission to leave a community corrections facility temporarily, i.e., with a set return, and then doesn't come back. If the individual were to remain at large, he or she couldn't be successfully prosecuted, since we don't try defendants in absentia on felony charges. If the individual were arrested and then held on a criminal complaint, he or she would not have violated the statute, according to Webb, because he or she would have been returned, albeit involuntarily. That sort of squirrely result cannot be teased out of any plausible reading of the statute. The Legislature intended to punish people who do what Webb did here, and the language reasonably implements that intent.

Webb has not shown the district court erred in convicting him of aggravated escape from custody.

Affirmed.